IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------x
:
UNITED STATES OF AMERICA  :  3:10 CR 232 (EBB)
:
v.  :
:
BRANDON EDWARDS  :  DATE: APRIL 1, 2011
:
---------------------------------------------------------x

## RULING ON DEFENDANT'S MOTION FOR BOND

Defendant has been charged in a one-count indictment, filed November 18, 2010 (Dkt. #1), with unlawful possession of ammunition by a convicted felon. He was arrested on November 19, 2010, and detained without prejudice to filing a motion for reconsideration. (Dkts. ##4-6). On January 18, 2011, defendant filed the pending Motion for Bond (Dkt. #14), the hearing for which was held before this Magistrate Judge on March 30, 2011. (Dkt. #15). Jury selection is scheduled before Senior U.S. District Judge Ellen Bree Burns on May 24, 2011. (Dkts. #11; see also Dkts. ##9-10, 12).

At the hearing, defense counsel proffered that he has represented defendant on his state criminal charges since June 2010 and defendant "faithfully" has appeared in state court as required. Defense counsel emphasized that when defense counsel received a telephone call from an ATF agent about this federal warrant, defense counsel notified defendant, who self-surrendered the next morning. As a result, defendant argued that defendant does not pose a risk of flight, despite the recommendation of the United States Probation Office ["USPO"].

The AUSA acknowledged that defendant self-surrendered on this case, but emphasized defendant's "pattern of failed supervision" in his criminal record, including six violations of state probation, two convictions for failure to appear ["FTA"], and revocation of

supervised release in his prior federal conviction, U.S. v. Brandon Edwards, 02 CR 305 (EBB). In that case, in which defendant received a sentence of sixty months and three years' supervised released, Judge Burns revoked his supervised release in September 2008, sentencing him to an additional one year and one day, with no supervision to follow. The AUSA also highlighted defendant's arrest in state court on June 7, 2010, for third degree assault and 2nd degree threatening, in which he allegedly repeatedly punched his girlfriend, threw her to the ground, and threatened to shoot her. Thus, the AUSA argued that defendant poses a danger to the community. The AUSA further questioned the bond package suggested by defense counsel, in that defendant's mother, with whom defendant would reside and who would serve as a third-party custodian, herself has an "extensive criminal history," the last of which occurred in March 2000. The AUSA proffered that the $55,000 property in North Carolina offered as surety is insufficient, under these circumstances.

Defense counsel responded that the two FTA convictions were misdemeanors, that he comes from a "close knit family" (seven of whom were present in the courtroom to show their support for him), and that defendant's mother, who had a heart transplant in 2009, is a "totally different person" now, who is "very balanced" and "totally responsible." Defense counsel also represented that defendant had been on federal supervised release for two years "without incident" prior to leaving the halfway house for only one hour, for which his supervised release was violated.

The USPO recommended detention on the basis of danger to the community, in that defendant is "highly unlikely" to abide by any conditions of release.

As the AUSA appropriately argued, defendant's lengthy criminal record "speaks for itself," with fifteen prior convictions in state court, with arrests from July 1997 (when he was seventeen years old) through October 2009 (when he was twenty-nine years old), as reflected

2

in the comprehensive Pretrial Services Report.  Except for the first arrest, for each subsequent arrest, he was on bond or probation from a previous arrest or conviction.  His state probation was revoked a remarkable <u>six</u> times, and he has two convictions for FTA.  The convictions were all for narcotics offenses or acts of violence.  In 2002, he was convicted on a felon-in-possession charge here, and after serving his federal prison term, his supervised release was revoked in September 2008, for his unauthorized absence from a half-way house (even if the period of time was only one hour, as represented by defense counsel).  He has a discharge violation pending from state court, from May 2010.  In addition, he has <u>five</u> state charges pending against him, from May through August 2010, again all for narcotics or crimes of violence.  The only gaps in his criminal record occurred while he was in prison.

Moreover, as set forth in the Pretrial Services Report, defendant's mother has <u>thirty-one</u> state court convictions (from 1987 to 2000), <u>three</u> state probation violations, one federal conviction, and one federal probation violation, for which she was sentenced to eighteen months' imprisonment.  In light of her recent heart transplant, she may not be a suitable third-party custodian for her son.

As stated at the conclusion of the proceeding, the Government has sustained both its burdens with respect to risk of flight, as set forth by the Second Circuit in <u>United States v. Shakur</u>, 817 F.2d 189, 194-95 (2d Cir.)(citations omitted), <u>cert. denied</u>, 484 U.S. 840 (1987):

> First, the court must make a finding as to whether the defendant presents a risk of flight if not detained . . . .
>
> Second, if the court finds that a defendant is likely to flee, then the court must proceed to the second step of the inquiry, namely, whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released.  The burden of proof is on the government to prove the absence of such conditions by a preponderance of the evidence.

In light of the defendant's inability to stay clear of the criminal justice system from 1997 through the present, defendant clearly poses a risk of flight. This defendant has one of the worst criminal records of any defendant who has appeared before this Magistrate Judge in her twenty–six years on the federal bench, particularly with respect to supervision, <u>even in federal court</u>. His criminal record has not improved, and in fact, appears to have deteriorated even more, subsequent to September 2008, when his federal supervised release was revoked, by virtue of five new arrests in the three-month span of May through August 2010, for narcotics offenses or acts of violence. There is no reason to believe that he would be compliant with bond now.

Similarly, the bond package suggested by defense counsel is woefully inadequate, particularly with the defendant's mother as the third-party custodian.

Dated at New Haven, Connecticut, this 1st day of April, 2011.

SO ORDERED.

/s/  Joan G. Margolis, USMJ
JOAN G. MARGOLIS
UNITED STATES MAGISTRATE JUDGE